| | | |
|---|---|---|
| PAULA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15cv410 |
| | ) | |
| SANDRA LEMONDS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant's Motion to Dismiss Under Rule 12(b)(6)" (Docket Entry 9) (the "Motion"), which seeks dismissal of retaliation claims made by Paula Johnson ("Johnson") under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act (the "ADA"), the Age Discrimination in Employment Act (the "ADEA"), and the Genetic Information Nondiscrimination Act (the "GINA"). For the reasons that follow, the Court should deny the Motion.

**BACKGROUND**[1]

Paula Johnson brings "a retaliation charge under section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA" against her former employer,

---

[1] Liberally construed, Johnson's pleadings (Docket Entries 2, 2-1) provide the factual allegations detailed herein. See Bala v. Commonwealth of Va. Dep't of Conservation & Recreation, 532 F. App'x 332, 334 (4th Cir. 2013).

Sandra Lemonds ("Lemonds"), the owner of Earth Angels. (Docket Entry 2 at 1-2).[2] Johnson maintains that Lemonds contacted Johnson's subsequent employer, Kesler Home Care Services ("Kesler"), multiple times in July 2014 "when [Johnson] already had a E.E.O.C. claim of discrimination pending since December of 2013" (id. at 2) against Lemonds and Earth Angels. (See Docket Entry 2-1 at 3-4.) Johnson began working for Kesler sometime in or after March 2014. (See id. at 5.) Johnson's fiancé and daughter also worked for Kesler, each as a caregiver to an individual client (collectively, the "Clients"). (Docket Entry 2 at 2; Docket Entry 2-1 at 3, 5.) Johnson's daughter and fiancé were witnesses on Johnson's behalf in the pending E.E.O.C. proceedings. (See Docket Entry 2-1 at 8, 15.) On or before July 2, 2014, Lemonds visited the Clients' home and coerced them into firing Kesler by telling lies about Johnson and her fiancé (id. at 2, 3, 5, 10, 15); specifically, "Lemonds accused both of [them] of stealing" (id. at 3). As a result, Johnson's fiancé and daughter lost their Clients. (Id.)

Lemonds contacted Kesler multiple times in July 2014 about these Clients, Johnson, and Johnson's fiancé and daughter. (Id. at 2-6, 8-11, 13-15.) In these contacts, Lemonds asked whether Kesler

---

[2] Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

2

employed Johnson and repeatedly demanded information about Johnson's "work status." (Id. at 2.)  Lemonds also told Kesler that it "need[s] to watch [Johnson] because she can get this company closed down for medicaid fraud . . . and[ ]a ton of bricks was going to fall down on her head along with the company." (Id.)

**DISCUSSION**

### I. Motion to Dismiss Standards

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") tests the sufficiency of a complaint, but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  Thus, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002).  Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of Appeals of Md., ___ U.S. ___, 132 S. Ct. 1327 (2012).  The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).  Moreover, a pro se complaint must "be liberally

3

construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [*Bell Atlantic Corp. v.*] *Twombly*'s requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).

In ruling on a 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont, 637 F.3d at 448. Generally, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment," an action from which courts should refrain "where the parties have not had an opportunity for reasonable discovery. Additionally, statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion." Id. at 448-49 (citation omitted). Nevertheless, in reviewing 12(b)(6) motions, courts "may properly take judicial notice of matters of public record." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678

4

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual recitations, but must provide the defendant "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and alteration omitted). Thus, although a plaintiff must allege sufficient facts "to state all the elements of her claim," Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), she need not plead facts constituting a McDonnell Douglas prima facie case of discrimination to survive a motion to dismiss, Swierkiewicz, 534 U.S. at 514-15 (analyzing Title VII and ADEA claims).

## II. Retaliation Claims

### A. Preliminary Challenges

Lemonds asserts that the Court should "dismiss [Johnson's] claims under the ADEA, the ADA, and the GINA" because Johnson "has neither opposed any of [Lemonds'] activities under these statutes nor engaged in any participatory activity under any of these statutes." (Docket Entry 10 at 6-7.) In support of this assertion, Lemonds contends that Johnson's "December 2013 EEOC filing had nothing to do with ANY recognized disability" and that Johnson "(who isn't even old enough to receive ADEA protection)"

5

has similarly not "engaged in any protected activity" regarding the ADEA and GINA. (Id. at 7-8.)[3] Lemonds does not support these contentions with citation to anything in the pleadings, and, indeed, the complaint and its attachments fail to establish that Johnson's 2013 "E.E.O.C. claim of discrimination" (Docket Entry 2 at 2) did not involve claims under the ADA, ADEA, and/or GINA. (See Docket Entries 2, 2-1.)[4] Hence, Lemonds' contentions about the contours of Johnson's underlying E.E.O.C. charge (and age) "constitute matters beyond the pleadings [that] cannot be considered on a Rule 12(b)(6) motion." E.I. du Pont, 637 F.3d at 449. The Court should therefore deny Lemonds' request to dismiss Johnson's ADA, ADEA, and GINA retaliation claims.

---

3 Filing an E.E.O.C. charge constitutes protected activity. Carter v. Bell, 33 F.3d 450, 460 (1994) (analyzing Title VII claim); see also Ortiz v. City of San Antonio Fire Dep't, 806 F.3d 822, 827 (5th Cir. 2015) (GINA); Royster v. Gahler, ___ F. Supp. 3d ___, ___, Civil Action No. 15-1843, 2015 WL 9582977, at *21 (D. Md. Dec. 31, 2015) (ADEA); Evans v. Larchmont Baptist Church Infant Care Ctr., Inc., 956 F. Supp. 2d 695, 704-05 (E.D. Va. 2013) (ADA).

4 Johnson's "E.E.O.C. claim of discrimination" (Docket Entry 2 at 2) does not appear in the record of this action or of the related case of Johnson v. Earth Angels, No. 1:14-cv-1087 (M.D.N.C. 2014). Had Lemonds provided a copy of this E.E.O.C. charge, the Court could have considered that document in ruling on the Motion. See Philips, 572 F.3d at 180 (explaining that courts may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic"). Moreover, if filed in either case, the Court could have taken judicial notice of the E.E.O.C. charge as a matter of public record. Id.; see also Robinson v. Bowser, No. 1:12cv301, 2013 WL 3791770, at *5 (M.D.N.C. July 19, 2013); Alexander v. City of Greensboro, No. 1:09-cv-293, 2011 WL 3360644, *6 (M.D.N.C. Aug. 3, 2011).

6

In regard to Johnson's Title VII retaliation claim, Lemonds first asserts that Johnson "makes no factual allegations or legal contentions as to the application of Title VII to [Lemonds]" or "the required exhaustion of administrative remedies." (Docket Entry 10 at 5.) Construed liberally, Johnson's pleadings do provide the necessary factual support for Title VII application and administrative exhaustion. (See, e.g., Docket Entry 2-1 at 1, 3-4 (E.E.O.C. right to sue letter and retaliation charge investigation materials), 18-20 (interchangeability of Earth Angels and Lemonds), 19-20 (15 employee threshold).) Accordingly, Lemonds' preliminary Title VII challenge fails.[5]

**B. Causation Challenge**

Lemonds next contends that Johnson failed to allege the causation element of her Title VII retaliation claim. (See Docket Entry 10 at 6.) "This [contention] brings into stark relief the tension embedded in the Supreme Court's recent jurisprudence regarding Rule 8 pleading requirements. It requires [the Court] to

---

[5] Nevertheless, if the Court agrees with Lemonds' assessment of the pleadings, the Court should grant Johnson an opportunity to cure the identified deficiencies by amending her complaint. See Pittston Co. v. United States, 199 F.3d 694, 705 (4th Cir. 1999) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." (internal quotation marks omitted)); Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action.").

7

reconcile the Supreme Court's decisions in [*Twombly*] and [*Iqbal*] with its decision in [*Swierkiewicz*] — no small task as the inconsistent case law in this area shows." McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 588 (4th Cir. 2015) (Wynn, J., dissenting); see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 520 (7th Cir. 2015) ("In the wake of *Twombly* and *Iqbal*, there remain considerable uncertainty and variation among the lower courts as to just how demanding pleading standards have become. For a good recent illustration, see the majority and dissenting opinions in *McCleary-Evans v. Maryland Dep't of Transportation*, 780 F.3d 582 (4th Cir. 2015), which disagree about how to reconcile [*Swierkiewicz*] with *Twombly* and *Iqbal*.").

  This tension arises from the apparent conflict between the Supreme Court's warnings that, to survive a 12(b)(6) motion to dismiss, plaintiffs (i) do not need to plead a McDonnell Douglas prima facie case of employment discrimination, but (ii) must include sufficient factual matter to show the existence of a plausible, not speculative, claim. Compare Swierkiewicz, 534 U.S. at 514-15 (explaining that the "Rules do not contain a heightened pleading standard for employment discrimination suits," and "hold[ing] that an employment discrimination plaintiff need not plead a prima facie case of discrimination and that [the plaintiff's] complaint is sufficient to survive [the] motion to

8

dismiss" "because it gives [the defendant] fair notice of the basis for [the plaintiff's] claims"), with Iqbal, 556 U.S. at 677-84 (outlining pleading standards and concluding that the plaintiff "has not nudged his claims of invidious discrimination across the line from conceivable to plausible" (internal quotation marks and alteration omitted)). The Fourth Circuit's recent McCleary-Evans decision provides limited assistance in reconciling Swierkiewicz and Iqbal. In that decision, a divided Fourth Circuit concluded that the complaint's relevant allegation was "*consistent* with discrimination, [but] does not alone support a *reasonable inference* that the decisionmakers were motivated by bias. . . . In short, [the] complaint 'stop[ped] short of the line between possibility and plausibility of entitlement to relief.'" McCleary-Evans, 780 F.3d at 586 (majority opinion) (emphasis and final alteration in original). Therefore, the Fourth Circuit concluded,

> while the district court improperly applied the *McDonnell Douglas* evidentiary standard in analyzing the sufficiency of [the] complaint, contrary to *Swierkiewicz*, the court nonetheless reached the correct conclusion under *Twombly* and *Iqbal* because the complaint failed to state a plausible claim for relief, as required by Federal Rule of Civil Procedure 8(a)(2).

Id. at 588.

According to the Fourth Circuit, courts should not apply the McDonnell Douglas standard on a motion to dismiss "because '[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement,' that may require demonstrating more elements than are

9

otherwise required to state a claim for relief." Id. at 584 (alterations in original; citation omitted) (first quoting Swierkiewicz, 534 U.S. at 510; then citing Swierkiewicz, 534 U.S. at 511-12).[6] Yet, in reviewing motion to dismiss rulings, the Fourth Circuit continues to speak of "a prima facie Title VII retaliation claim." DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); see also Coleman, 626 F.3d at 190 ("The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action.").

Similarly, in analyzing motions to dismiss retaliation claims, district courts in the Fourth Circuit continue to rely on decisions evaluating, at or after summary judgment, the McDonnell Douglas prima facie case. See, e.g., Royster v. Gahler, ___ F. Supp. 3d ___, ___, Civil Action No. 15-1843, 2015 WL 9582977, at *21 (D. Md. Dec. 31, 2015) ("To state a claim of retaliation . . . under Title

---

6 To succeed under the McDonnell Douglas burden-shifting framework on a Title VII retaliation claim, a plaintiff must first establish a prima facie retaliation case — protected activity, adverse action, causation — at which point the burden shifts to the employer to prove that "its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." Foster v. University of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015) (internal quotation marks and citation omitted).

10

VII[], a plaintiff must satisfy three elements: '(1) the plaintiff engaged in a protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action.'" (first quoting Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 684 (4th Cir. 2009) (summary judgment decision); then citing Coleman, 626 F.3d at 190 (motion to dismiss decision); then citing Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (summary judgment decision))). Simply put, in the retaliation context, the McDonnell Douglas prima facie case analysis appears to retain relevance at the motion to dismiss stage. Compare Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene, 317 F. App'x 351, 354 (4th Cir. 2009) ("Finally, [the plaintiff] contends that the district court erred in dismissing her retaliation claim. To establish a prima facie case of retaliation, [the plaintiff] must prove that she engaged in a protected act, [the employer] acted adversely against her, and there is a causal connection between the act and the adverse action"), with id. at 355 ("We conclude that under notice pleading requirements, [the plaintiff] stated a claim of retaliation sufficient to survive a motion to dismiss.").

Under these circumstances, in analyzing Lemonds' contention, the undersigned will consult cases analyzing the causation element

11

under McDonnell Douglas.[7] In the McDonnell Douglas analysis, establishing causation is not an "onerous burden." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) (concluding that the plaintiff established a prima facie retaliation claim where her "proof of a causal connection between the protected activity and her discharge essentially was that she was fired after her employer became aware that she had filed a discrimination charge"); see also Foster v. University of Md.-E. Shore, 787 F.3d 243, 251 (4th Cir. 2015) (explaining that "the burden for establishing causation at the prima facie stage is 'less onerous'" than for proving pretext at the final stage of the McDonnell Douglas analysis).[8] If anything, the burden for alleging causation is even less onerous. See, e.g., Royster, ___ F. Supp. 3d ___, ___, 2015 WL 9582977, at *21 (concluding "that [the] plaintiff has stated a claim for retaliation" where the "plaintiff contends that her 'protected activity was the cause of the [d]efendant's . . . actions'" (omission in original)).

---

[7] In so doing, the undersigned will not ignore the significant difference between a motion for summary judgment and a motion to dismiss. See Iodice v. United States, 289 F.3d 270, 280-81 (4th Cir. 2002).

[8] Lemonds contends that University of Texas Southwestern Medical Center v. Nassar, ___ U.S. ___, 133 S. Ct. 2517 (2013) heightens the causation standard for Title VII retaliation claims. (Docket Entry 10 at 5-6.) It does not. See Foster, 787 F.3d at 251 ("hold[ing] that *Nassar* does not alter the causation prong of a prima facie case of retaliation"), 252 ("*Nassar* does not alter the legal standard for adjudicating a *McDonnell Douglas* retaliation claim.").

12

Lemonds maintains that Johnson's pleadings fail to adequately allege causation, on the theory that too much time elapsed between the protected activity and adverse action. (See Docket Entry 10 at 6 ("Thus, [Johnson] *only* alleges that some *seven months* after her alleged protected activity, [Lemonds] engaged in the alleged adverse action." (emphasis in original)).)[9] Temporal proximity between protected activity and adverse action can satisfy the causation element. See Williams, 871 F.2d at 454, 457. Likewise, temporal proximity between adverse actions and developments in discrimination-related administrative proceedings can establish causation. Carter, 33 F.3d at 460 (recognizing that causation exists where adverse action taken approximately two years after first E.E.O.C. complaint filed, six months after second complaint filed, and one month after hearing on initial E.E.O.C. complaint). Conversely, a long delay between protected activity and adverse action generally "tends to negate the inference of discrimination." Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004).

"[T]he reason a long wait often implies no causation [is] that supervisors out to punish someone likely do so at an early opportunity after the event, while delay makes an intervening cause more likely." McGuire v. City of Springfield, Ill., 280 F.3d 794, 796 (7th Cir. 2002) (emphasis omitted). Accordingly, the idea that

---

9 Notably, in making this challenge, Lemonds relies entirely on cases evaluating claims at the summary judgment stage or later. (See Docket Entry 10 at 4-6.)

13

mere passage of time undermines causation has less force in the post-termination retaliation case. See, e.g., Dixon v. Gonzales, 481 F.3d 324, 335 (6th Cir. 2007) ("[A] mere lapse in time between the protected activity and the adverse employment action does not inevitably foreclose a finding of causality.  This is especially true in the context of a reinstatement case, in which the time lapse between the protected activity and the denial of reinstatement is likely to be lengthier than in a typical employment-discrimination case." (emphasis omitted)). Thus, post-termination retaliation plaintiffs can establish causation by showing that, notwithstanding a long delay, the employer took "the first available opportunity" to retaliate after protected activity. Price, 380 F.3d at 213 ("conclud[ing] that [the plaintiff] has established a prima facie case of discrimination because a reasonable trier of fact could conclude that [the employer] knew of the protected activity and because [the employer], at the first available opportunity, declined to hire [the plaintiff]"); see also Templeton v. First Tenn. Bank, N.A., 424 F. App'x 249, 251 (4th Cir. 2011) (deeming causation element satisfied because the plaintiff "was retaliated against, if at all, upon the employer's first opportunity to do so, . . . approximately two years after [the plaintiff's protected activity]").

Johnson asserts that Lemonds retaliated against her at the earliest opportunity.  (See Docket Entry 12 at 2 ("[Lemonds]

14

knowingly contacted Kesler Homecare after finding out where [Johnson's] place of employment was after 7 months.").) The pleadings support this contention. (See, e.g., Docket Entry 2-1 at 2 (alleging that Lemonds (i) called Kesler "asking if [Johnson] was employed with [Kesler]," (ii) warned Kesler that it "need[s] to watch [Johnson] because she can get this company closed down . . . and[ ]a ton of bricks was going to fall down on her head along with the company," and (iii) repeatedly contacted Kesler about Johnson's "work status").) Accordingly, Johnson's pleadings contain sufficient factual allegations of causation to survive a Rule 12(b)(6) motion. See Templeton, 424 F. App'x at 251 ("conclud[ing] that the district court erred when it determined that [the plaintiff's] retaliation claims should be dismissed at the motion to dismiss stage because too much time had elapsed between [the plaintiff's] harassment complaint and [the d]efendants' refusal to rehire her" two years later); see also Royster, ___ F. Supp. 3d ___, ___, 2015 WL 9582977, at *21 (concluding "that [the] plaintiff has stated a claim for retaliation" where the "plaintiff contends that her 'protected activity was the cause of the [d]efendant's . . . actions'" (omission in original)). The Court should therefore deny Lemonds' Motion.[10]

---

10 In the alternative, the Court should grant Johnson leave to amend her complaint to allege any additional facts that would demonstrate the causal connection between her protected activity and Lemonds' alleged retaliation. See, e.g., Lettieri v. Equant Inc., 478 F.3d 640, 650-51 (4th Cir. 2007) (observing that

15

## **CONCLUSION**

Johnson sufficiently alleges retaliation under Title VII. Additionally, nothing in the pleadings undermines Johnson's ability to bring ADA, ADEA, and GINA retaliation claims.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 9) be **DENIED**.

This 4th day of February, 2016.

>                  /s/ L. Patrick Auld
>                    L. Patrick Auld
>            United States Magistrate Judge

---

intervening events between protected activity and adverse action established causation); Carter, 33 F.3d at 460 (recognizing that activity in administrative proceeding can support causality); see also Gordon, 574 F.2d at 1152 ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action.").